UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MEME STEPHENS, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO._____ |
| § | |
| GROUP & PENSION § | |
| ADMINSTRATORS, INC. and § | |
| GROUP & PENSION § | |
| ADMINISTRATORS, LLC § | |
| Defendants. § | |

**ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW **MEME STEPHENS,** Plaintiff in the above entitled and numbered cause, complaining of **GROUP & PENSION ADMINISTRATORS, LLC and GROUP & PENSION ADMINISTRATORS, INC.** (Collectively GPA), and files this Original Complaint and Demand for Jury Trial, and in support thereof would respectfully show the Court as follows:

**I.**

**PARTIES**

1. Plaintiff, Meme Stephens, is an individual who resides in Denton County, Texas.

2. Defendant GROUP & PENSION ADMINISTRATORS, LLC is a domestic limited liability company and can be served by serving its registered agent Kathy Enochs with service of process at 12770 Merit Drive, 2nd Floor, Dallas, Texas 75251.

3. Defendant GROUP & PENSION ADMINISTRATORS, INC. is a domestic corporation and can be served by serving its registered agent Kathy Enochs with service of process at 12770 Merit Drive, 2nd Floor, Dallas, Texas 75251.

## II.

## JURISDICTION

4. The Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1343 because the claims arise under Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §§ 2000e *et seq.*) and 42 U.S.C. § 1981.

5. GPA, at all relevant times, employed more than 500 regular employees and engaged in an industry or enterprise affecting interstate commerce.

## III.

## VENUE

6. Venue of this action is governed by 42 U.S.C. § 2000e-5(f)(3) and is proper in the Northern District of Texas because Plaintiff was employed by GPA in Dallas County, Texas, and the incidents giving rise to this lawsuit occurred in Dallas County, Texas.

## IV.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. On or about November 2, 2020 Stephens timely filed a Charge of Discrimination with the EEOC and TWC – Civil Rights Division. Attached hereto as Exhibit "A' and fully incorporated herein for all purposes is a true and correct of the November 2, 2020 Charge.

8. On March 15, 2021 the EEOC issued its "Notice of Rights to Sue ("Notice"). Attached hereto as Exhibit "B" and fully incorporated herein for all purposes is a true and correct copy of the Notice.

9. The TWC – Civil Rights Division did not issue a Right to Sue.

10. It has been less than 90 days since Plaintiff' received the Notice and more than 180 days since Plaintiff filed the Charges with the TWC – Civil Rights Division.

## V.

## FACTUAL BACKGROUND

11. GPA is a third-party administrator that provides services to employers on their health care needs. It has its principal place of business at 12770 Merit Drive, 2nd Floor, Dallas, Texas 75251.

12. Plaintiff Meme Stephens, a Chinese American female, was hired by GPA December 4, 2006. She was initially employed as a Care Coach. Stephens was an excellent employee, and in fact, during her tenure she earned five promotions. Her last promotion was in July 2017, when Stephens was promoted to Sr. Manager of Disease Management (DM) & HealthWatch Support (HWS). In this role, Stephens continued her excellent work and continued to take pride in her work and went above and beyond.

13. During her employment with GPA, Stephens experienced unlawful discrimination and retaliation based on her race and/or national origin. Rosie Fields (HealthWatch Manager and Nurse Navigator Manager) and Barbara Derlein (HealthWatch Executive Director) targeted and treated her differently that her non-Asian counterparts.

14. On June 16, 2020 Stephens was place on a Performance/Behavior Improvement Plan (PBIP) wrought with inaccuracies of minute infractions and technicalities that on a daily basis go overlooked when it comes to other non-Asian employees. Despite GPA's professed policy of progressive disciple this PBIP was a ploy to ruin Ms. Stephen's stellar work history and reputation. The PBIP was not given to Stephens as an opportunity to improve rather as an excuse to demote a hardworking employee and subject her to discrimination. Furthermore, Stephens was

demoted to a non-managerial HealthWatch Support position (that would have been effective July 1, 2020) with a 25% reduction in compensation.  This is the same team that Stephens was asked on June 1, 2020 to manage.  One week prior, HW Support had an unprecedented number of overdue tasks. When Stephens managed HW Support prior to January 2020, this team consistently had minimal to zero overdue.

15. On, June 17, 2020 Stephens responded to the PBIP and refuted the allegations in the document.  She also reported the discrimination she was being subjected to and asked that her allegations be "immediately and thoroughly investigated".  Her complaint fell on deaf ears.  GPA wholly failed to follow its own protocol for addressing Stephens complaint. Despite numerous follow ups by Stephens requesting information and informing HR of her availability, she was never contacted to inquire about her complaints or informed about the process or status of her complaint.  Instead, GPA ignored the complaint and retaliate against Stephens.

16. Stephens was told that the PBIP was immediately in effect and that she would remain in her managerial position until July 1, 2020.  However, as soon as she submitted her complaint, Fields and Derlein did everything they could to sabotage and undermine her position and authority.  She was also immediately stripped of managerial duties and put in position to not be able effectively perform her duties. For example, she was, without warning, denied access to several vital platforms necessary to do her job.  Specifically, she no longer had supervisory privileges to Casetrakker (CTD), Ring Central and Smartsheet.  Also, Stephens was told that she was not allowed to communicate directly to the employee that was insubordinate to her on June 9, 2020. Fields and Derlein began to monitor Stephens and over-scrutinize items to make issues where none existed prior.  For example, she was informed that the DM phone queue service level was suddenly unacceptable, which had never been an issue previously.  Conveniently, Stephens

had been stripped of Ring Central access and unable to monitor, analyze, and explain any deficiencies. A fishing expedition ensued and Fields and Derlein began to go back to fabricate performance issues. For example, a meeting from August of 2019 subjected line "suspected HIPAA concern" was forwarded from Derlein to Fields. They also work in concert together to "cover up" and/or disguise Stephens unwarranted "demotion" as if it was something she "requested" as an "accommodation."

17. On June 30, 2020 Stephens was falsely accused of being a "no show" to work even though she requested and obtained approval for the day off several weeks before from Fields. No one bothered to look in the ADP system and instead HR contacted Stephens three times on her day off and told she was being reported as a "no show" and that HR had received numerous emails and calls to this effect.

18. All this after being forced out and humiliated by being demoted to an administrative position with a significant pay decrease. To add insult to injury, GPA refused to allow Stephens to inform staff that she had resigned, not allowing her to successfully transition her projects to co-workers and say her goodbyes.

19. Stephens employee reviews were also rewritten even though she supervised the employees. Historically, Derlein and Fields would provide feedback regarding staff evaluations, and at times some edits would be made once it has been agreed upon with the DM Manager. However, this year's evaluation was edited solely by Derlein and Fields, without Stephens consent or knowledge.

20. These are just a couple of examples of how Stephens was being targeted, treated differently, retaliated against and held to a different and higher standard than her peers. Another example is the PBIP she was unjustly given. GPA failed to follow its own GPA Policy for

Disciplinary Procedures. As stated in this procedure, "under normal circumstances, the Company endorses a policy of progressive discipline in which it attempts to provide employees with notice of deficiencies and an opportunity to improve." In over 13 years, Stephens never received a verbal or written reprimand.  Her performance consistently met GPA expectations, if not exceeded them.  This can be demonstrated by weekly reports issued by HealthWatch Quality Coordinator regarding task management for all HealthWatch (HW) teams. These reports, and most notably the line graph that shows weekly trends since January 2020, demonstrate that her record on task management is good on its own accord but even more impressive when compared to other HW teams.

## VI.

## COUNT ONE

### RACE DISCRIMINATION AND RETALIATION UNDER TITLE VII, THE TCHRA, AND § 1981

*(i)     Race Discrimination-Disparate Treatment*

21.     Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 20 above.

22.     Plaintiff is members of a class protected under the TCHRA (TEX LAB. CODE § 21.051), Title VII, and 42 U.S.C. § 1981 based on her race, Chinese American.

23.     GPA discriminated against Plaintiff in violation of the TCHRA, Title VII, and 42 U.S.C.§ 1981 by treating her differently and less favorably than her non-Chinese American co-workers.  Specifically, Plaintiff was targeted, disciplined and treated less favorably than her non-Chinese American co-workers.  Plaintiff was disciplined and penalized for violations or non-existing policies.  Plaintiff was essentially demoted.  GPA applied a different set of rules and standards to Plaintiff than her non-Chinese American counterparts.  Plaintiff was also not given

the same opportunities as her non-Chinese American coworkers. Plaintiff was forced out and constructively discharged.

### *(ii)  Retaliation*

24. Plaintiff incorporates by reference all the allegations set forth in paragraphs 1 through 23 above.

25. Stephens complained to HR on various occasions about the race discrimination. GPA failed to investigate or take any action to correct the discrimination.

26. Stephens was demoted then terminated under false pretenses.

27. Stephens was forced out and constructively discharged.

### *(iii)  Damages*

28. Plaintiff incorporates by reference all the allegations set forth in paragraphs 1 through 27 above.

29. As a direct and proximate result of GPA's conduct as set forth herein, Plaintiff has suffered actual and compensatory damages, including, but not limited to, lost wages, loss of benefits and loss of enjoyment of life, including emotional pain, suffering, inconvenience, and mental anguish, in an amount within the jurisdictional limits of this Court.

30. Plaintiff will further show that GPA's conduct as alleged herein was intentional and GPA acted with malice and/or reckless indifference entitling Plaintiff to compensatory and punitive damages as allowed by Section 21. 2585 of the Texas Labor Code and/or Title VII.

## VII.

## ATTORNEYS' FEES AND COSTS

31. Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 66 above.

32. In addition to actual, compensatory, and punitive damages, Plaintiff seeks to recover reasonable and necessary attorneys' fees and costs, including reasonable expert witness fees, as permitted under Section 21.259 of the Texas Labor Code, Title VII, and/or 42 U.S.C. § 1988.

## VIII.

## JURY DEMAND

33. Plaintiff request a jury trial.

## IX.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully pray that GPA be cited to appear and answer herein and that upon final hearing, Plaintiff has and recover from GPA as follows:

(a) Plaintiff seeks an injunction prohibiting Defendant from engaging ill unlawful employment practices.

(b) Plaintiff seeks additional equitable relief as may be appropriate such as reinstatement, promotion, back pay, front pay, and court costs.

(c) Plaintiff seeks punitive damages to the extent Defendant acted with malice or reckless indifference.

(d) Plaintiff seeks compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life; and other non pecuniary loses.

(e) Plaintiff seeks reasonable attorney's fees and costs including reasonable expert fees.

(f) Plaintiff seeks pre and post judgment interest at the maximum rate allowed by law.

Respectfully Submitted,

_____

**NELLIE GOMEZ**
State Bar No. 00798211
**GOMEZ LAW**
27120 Fulshear Bend Dr. Ste 902-320
Fulshear, Texas 77441
(713) 838-2658
(214) 461-9997 Facsimile

**ATTORNEY FOR PLAINTIFF**